

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 19, 2024**

**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MELE L. VAITUULALA | § | CASE NO. 22-42980-MXM11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| MELE L. VAITUULALA, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. NO. 23-04018 |
| | § | |
| N AND K PROPERTIES, LLC, | § | |
| | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
[*Relates to Adv. ECF No. 1*]

The Court conducted a trial on the *Complaint to Determine Validity and Extent of a Lien*[1]

(the "***Complaint***") filed by Mele L. Vaituulala (the "***Debtor***").

_____

[1] Adv. ECF No. 1.

The Court reviewed and carefully considered the Complaint, the Answer[2] filed by N and K Properties, LLC (the "***Defendant***"), the Stipulated Facts in the Amended Joint Pre-Trial Order,[3] the testimony of witnesses, the exhibits admitted into evidence, the arguments of counsel, the post-trial briefs filed by the parties, and relevant case law. This Findings of Fact and Conclusions of Law constitutes the Court's findings and conclusions required by Federal Rule of Civil Procedure 52, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[4]

## I.      JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the standing order of reference in this district. This adversary proceeding constitutes a core proceeding over which the Court has statutory and constitutional authority to enter a final order or judgment. Even if this Court would not otherwise have jurisdiction or authority to enter a final judgment, the Court finds that the parties have consented to the Court's issuance of a final judgment in this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II.      BACKGROUND FACTS

Debtor and her husband, Mr. Al Vaituulala, Sr. ("***Husband***") (together, the "***Vaituulalas***") owned the house located at 2005 Stacey Court, Arlington, TX ("***Stacey Court Home***"). The Vaituulalas lived at the Stacey Court Home together for approximately 40 years until Husband passed away in December 2022. Debtor contends that the Stacey Court Home "is and was her

---

[2] *Defendant's Answer to the Complaint to Determine the Validity and Extent of a Lien & Counterclaims*, Adv. ECF No. 17 (the "***Answer***").
[3] ECF No. 33.
[4] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

homestead" and that "she was the rightful owner of the [Stacey Court Home] at the commencement of this case."[5]

The Vaituulalas' son, Mr. Alifeleti Kaumana Vaituulala, Jr. ("**Al, Jr.**"), is a California investor and was the owner of AK Builders and Coatings, Inc., a California corporation ("**AK Builders**"). In the fall of 2019, AK Builders was experiencing financial difficulties and needed to borrow funds. Therefore, Al, Jr.—on behalf of AK Builders—approached Defendant requesting to borrow $125,000. Before agreeing to fund a loan, however, Defendant required AK Builders to execute a note and secure the note with collateral acceptable to Defendant. Not wanting to offer any of his own personal assets as collateral to secure the loan, Al, Jr. devised a scheme to use his parents' Stacey Court Home as collateral to secure AK Builder's loan from Defendant.

**A.     The transaction between the Vaituulalas and AK Builders—as evidenced by the Deed with Vendor's Lien**

To enable AK Builders to use the Stacey Court Home as collateral for its loan from Defendant, Al, Jr. encouraged his elderly parents to execute a *General Warranty Deed with Vendor's Lien* (the "***Deed with Vendor's Lien***")[6] to convey their Stacey Court Home to AK Builders. This conveyance would then allow AK Builders to use the Stacey Court Home as collateral for the $125,000 loan from Defendant. In support of their son's request, the Vaituulalas executed the Deed with Vendor's Lien on October 28, 2019.

General warranty deeds with vendors' liens are common and enforceable in Texas to document a purchase money security interest transaction. This particular Deed with Vendor's Lien, however, is a bit unusual as it purports to do the following:

---

[5] Complaint, ECF No. 1, pg. 2 ¶ 1.
[6] Pl. Ex. 2 at pg. 1; D. Ex. 1 at pg. 1.

- The Vaituulalas agreed to "GRANT, SELL and CONVEY all of their interest to [AK Builders] in the [Stacey Court Home] . . . ."[7]

- The consideration paid by AK Builders for the conveyance of the Stacey Court Home was "Ten Dollars ($10.00) and a note of even date executed by [AK Builders] and payable to the order of [Defendant] in the principal amount of One Hundred Twenty-Five Thousand Dollars ($125,000). This note is secured by a first and superior Vendor's Lien and Superior Title retained in this deed in favor of [the Vaituulalas] *and transferred to [Defendant]* by a first-lien deed of trust of even date from [AK Builders] to [Trustee]."[8]

- The Deed with Vendor's Lien provided further that "it is expressly agreed that the Vendor's Lien, as well as the Superior Title in and to the [Stacey Court Home], is retained against the [Stacey Court Home] until the above described [$125,000 Note] and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute."[9]

Consequently, under the terms of the Deed with Vendor's Lien, the Vaituulalas purportedly received consideration of $10 for the conveyance of the Stacey Court Home to AK Builders. AK Builders, on the other hand, received title to the Stacey Court Home and the $125,000 loan proceeds from Defendant.[10] Additionally, the Vendor's Lien retained by the Vaituulalas in the Deed with Vendor's Lien was transferred by the Vaituulalas to Defendant to secure the $125,000 Note executed by AK Builders in favor of the Defendant.

The Deed with Vendor's Lien transaction was further evidenced by a *Settlement Statement*[11] executed by the Vaituulalas and Al, Jr. (on behalf of AK Builders). The Settlement Statement also referenced the $125,000 loan provided by Defendant to AK Builders.

The Deed with Vendor's Lien was then recorded in the official real property records of Tarrant County, Texas, on November 4, 2019.

---

[7] *Id.*
[8] *Id.* (emphasis added)
[9] Pl. Ex. 2 at pg. 2; D. Ex. 1 at pg. 2.
[10] There is no evidence in the record to explain or disclose what AK Builders did with the $125,000 loan proceeds, other than it went into a bank account owned by AK Builders.
[11] D. Ex. 11.

Based on the credible evidence and specifically the testimony of Debtor, the Court finds

that Debtor had very limited or no understanding of the consequences resulting from her execution

of the Deed with Vendor's Lien—she was simply complying with the instructions from Husband

and Al, Jr.

**B.     The loan transaction between AK Builders and Defendant—as evidenced by the $125,000 Note and Deed of Trust**

If furtherance of Al, Jr.'s scheme to obtain the loan from Defendant, also on October 28,

2019, AK Builders and Defendant then entered in the following loan transaction:

- Al, Jr., on behalf of AK Builders, executed the $125,000 Note[12] made payable to Defendant;

- Al, Jr., on behalf of AK Builders, also executed the Deed of Trust[13] granting Defendant a lien in the Stacey Court Home (also referenced in the Deed with Vendor's Lien); and

- Defendant funded the $125,000 Note to AK Builders.[14]

The Deed of Trust was subsequently recorded in the official real property records of Tarrant

County, Texas, on December 18, 2019.

The $125,000 Note obligation incurred by AK Builders is troubling for two independent

reasons. First, the $125,000 Note had a three-month term with a balloon payment of $155,000, due

January 28, 2020—which equates to an interest rate of just under ***140%***.

Second, even more concerning, AK Builders entered into (i) the Deed with Vendor's Lien

transaction with Al, Jr's parents; and then (ii) the $125,000 Note and Deed of Trust transaction

with the Defendant ***while AK Builders was a Debtor-In-Possession in its own Chapter 11***

---

[12] D. Ex. 2.

[13] *Deed of Trust* (the "***Deed of Trust***"), Pl. Ex. 4; *see also* D. Ex. 3.

[14] The Court takes judicial notice of the *Monthly Operating Report for Small Business Under Chapter 11* filed in the AK Builders California Bankruptcy Case (defined *infra*) at [Cal. ECF No. 40] (reflecting the net loan proceeds deposit into AK Builders bank account).

***bankruptcy case*** pending in the Eastern District of California.[15] As detailed more fully below, the record established that neither of these transactions were ever disclosed or approved by the bankruptcy court in the AK Builders California Bankruptcy Case.

**C.      The AK Builders California Bankruptcy Case**

On July 29, 2019—three months *prior* to entering into (i) the Deed with Vendor's Lien transaction, and (ii) the $125,000 Note and Deed of Trust transactions—AK Builders filed a *Voluntary Petition for Non-Individuals Filing for Bankruptcy*[16] seeking relief under Chapter 11 of Title 11 of the United States Code. The petition was signed by Al, Jr. on behalf of AK Builders. There is no evidence in the record to establish or suggest that AK Builders sought or obtained Bankruptcy Court approval prior to entering into either (i) the Deed with Vendor's Lien transaction with the Vaituulalas, or (ii) the $125,000 Note and Deed of Trust transaction with Defendant.[17]

Additionally, based on the credible evidence at trial, the Court finds and concludes that neither Debtor nor Defendant had any notice or knowledge that AK Builders was a debtor-in-possession in its own Chapter 11 bankruptcy case when they entered into the above transactions with AK Builders. The Court further finds and concludes that Al, Jr.'s failure to disclose AK Builders' bankruptcy was purposeful to implement his scheme to use the Vaituulalas' home to obtain the $125,000 loan from Defendant.

---

[15] *In re AK Builders and Coatings, Inc.*, Case No. 19-24759 filed in the United States Bankruptcy Court Eastern District of California (the "***AK Builders California Bankruptcy Case***").

[16] *Id.* at [Cal. ECF No. 1].

[17] The Court has taken judicial notice of the AK Builders California Bankruptcy Case docket sheet, and there is no entry on the docket to indicate or suggest that AK Builders filed a motion or obtained bankruptcy court approval to enter into either the Deed with Vendor's Lien transaction or the $125,000 Note and Deed of Trust transaction. The Court also listened to the hearings conducted in the AK Builders' California Bankruptcy Case on September 10, 2019 [Cal. ECF No. 26], October 22, 2019 [Cal. ECF No. 37], October 22, 2019 [Cal. ECF No. 37], December 4, 2019 [Cal. ECF No. 46], and February 19, 2020 [Cal. ECF No. 76]. Not one time did counsel for AK Builders inform the California Bankruptcy Court that AK Builders entered into the transactions with the Vaituulalas or with Defendant.

### D.    AK Builders fails to pay the $125,000 Note

While still in its Chapter 11 bankruptcy case, AK Builders failed to pay the $125,000 Note owing to Defendant by its January 28, 2020, due date, causing the $125,000 Note to go into default. Because the $125,000 Note was in default and accelerated under its own terms, Defendant filed a *Notice of Foreclosure Sale*[18] with the County Clerk of Tarrant County, Texas, scheduling the Stacey Court Home for an April 7, 2020, foreclosure sale.

On April 7, 2020, Defendant then conducted the scheduled foreclosure sale, at which the Defendant's credit bid of $135,000 was accepted by the Substitute Trustee under the Deed of Trust as the highest bid at the scheduled foreclosure sale. The Substitute Trustee thereafter executed and then filed the *Substitute Trustee's Deed*[19] in the real property records of Tarrant County, Texas, conveying the Stacey Court Home to Defendant.

Again, the credible evidence suggests that (i) AK Builders failed to disclose any of these transactions in its pending California Chapter 11 bankruptcy case; and (ii) the Defendant had no notice and was not aware that AK Builders was a debtor-in-possession when Defendant scheduled and conducted the foreclosure sale of the Stacey Court Home.

On July 16, 2020—several months after the Stacey Court Home was conveyed to Defendant by the Substitute Trustee's Deed—AK Builders' Chapter 11 California Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code.

It was not until November 26, 2020—more than sixteen months after AK Builders filed its California Chapter 11 bankruptcy case and more than four months after its Chapter 11 case was converted to Chapter 7—that AK Builders filed an Amended Schedule A/B and Schedule D,[20]

---

[18] D. Ex. 5.
[19] D. Ex. 6.
[20] D. Ex. 4.

thus disclosing for the first time in the AK California Bankruptcy Case that AK Builders allegedly

owned the Stacey Court Home and that Defendant was a creditor of AK Builders.

**E.**      **Following the Foreclosure of the Stacey Court Home, Defendant and Al, Jr., on behalf
of AK Builders, enter into a Residential Lease Agreement for the Stacey Court Home**

Following Defendant's acquisition of the Stacey Court Home at foreclosure and while AK

Builders was still a Chapter 11 debtor-in-possession, Defendant and Al, Jr., on behalf of AK

Builders, entered into a *Residential Lease Agreement*[21] on April 27, 2020. Again, there is no record

in the AK Builders California Bankruptcy Case that AK Builders obtained bankruptcy court

approval to enter into the lease.

The Residential Lease Agreement provided, in part:

> 5. **USE OF PREMISES**. The Premises shall be used and occupied solely
> by Tenant and Tenant's immediate family, consisting of AK Builders (AL
> Vaituulala), exclusively, as a private single family dwelling. . . .[22]

Tenant is defined in the lease as "Al Vaituulala for AK Builders and Coatings (hereinafter

referred to as 'Tenant.'"[23]

Al, Jr. testified that he did not execute or authorize an electronic version of his signature to

be placed on the Residential Lease Agreement. The Court found Al, Jr.'s testimony—that he did

not execute or enter into the Residential Lease Agreement on behalf of AK Builders—not credible.

On the other hand, the Court found the testimony of Mr. Narinder Bains—the representative of

Defendant—to be credible on this issue. Additionally, Mr. Bains's testimony was corroborated by

(i) two rent checks in the amount of $2,100[24]—the rent due under the Residential Lease

Agreement—signed by Al, Jr. on behalf of AK Builders and made payable to Mr. Subodh

---

[21] D. Ex. 7.
[22] D. Ex. 7 at pg. 2 (parenthetical in original).
[23] D. Ex. 7 at pg. 1.
[24] D. Ex. 8.

8

Banerjee, the property manager for Defendant; (ii) the two rent checks were also reflected in the May 2020[25] and June 2020[26] Monthly Operating Reports signed by Al, Jr. and filed in the AK Builders California Bankruptcy Case (but the purpose of the checks was not disclosed); and (iii) real property tax payments[27] for the Stacey Court Home were made on behalf of Defendant after it acquired the Stacey Court Home at the foreclosure sale.

The Residential Lease Agreement terminated under its terms, but the Vaituulalas failed to vacate the Stacey Court Home. Therefore, on or about November 21, 2022, Defendant initiated a Texas state court eviction proceeding seeking to evict the Vaituulalas from the Stacey Court Home. To prevent the trial in the eviction proceeding from going forward, Debtor filed her underlying bankruptcy case and then the Complaint initiating this Adversary Proceeding.

**F.    Debtor ultimately vacated the Stacey Court Home and moved to Hawaii to live with her daughter**

Debtor testified that, after Husband passed in December 2022, she was afraid to live alone in the Stacey Court Home and could not take care of herself. Therefore, she moved to Hawaii to live with her daughter. She testified further that she had no intention of returning to live alone in the Stacey Court Home.

### III.    ANALYSIS

Debtor filed her Complaint against Defendant contending:

i.    The Stacey Court Home is her homestead, and it was encumbered by Defendant without her knowledge;[28] and

---

[25] Cal. ECF No. 142 at pg. 10.
[26] Cal. ECF No. 143 at pg. 9.
[27] D. Ex. 12.
[28] Amended Joint Pre-Trial Order, Adv. ECF No. 33, pg. 1.

ii. The transfer of the Stacey Court Home to AK Builders was a "pretended sale" and is void under Texas Constitution Article XVI § 50(c). Consequently, AK Builders' subsequent transactions with Defendant, including the foreclosure sale of the Stacey Court Home, are void.[29]

Defendant denies Debtor's claims on the merits and asserts the following affirmative defenses:

- *Estoppel*—Defendant contends Debtor "is estopped from contending that the [Deed with Vendor's Lien] she signed and had notarized has no legal effect because she intended for the transaction to be a sham."[30]

- *Bona Fide Third-Party Lender Without Notice*—Defendant contends that it "was a bona fide lender that acquired its interest in the property in good faith, for value, and without notice of the claim or interest of the Vaituulalas."[31]

- *Equitable and Contractual Subrogation*—Defendant contends it is entitled to equitable and contractual subrogation for the funds it loaned and for its payment of property taxes and other costs incurred relating to the Stacey Court Home.[32]

- *Laches*—Defendant contends that, "[b]ecause [Defendant] has changed its position and because [Debtor] delayed asserting her claims until approximately three years since transferring the property, [Defendant] is entitled to the defense of laches."[33]

---

[29] Complaint, Adv. ECF No. 1, pg. 6 ¶ 30(a).
[30] Answer, Adv. ECF No. 17, pg. 3 ¶ 34.
[31] Answer, Adv. ECF No. 17, pg. 4 ¶ 42.
[32] Answer, Adv. ECF No. 17, pg. 5 ¶ 44.
[33] Answer, Adv. ECF No. 17, pg. 6 ¶ 51.

Defendant also asserts counterclaims against Debtor "for fraud, misrepresentation, fraud by nondisclosure, negligent misrepresentation, conspiracy to commit fraud, and aiding and abetting AK Builders to fraudulently induce [Defendant] to make a loan to AK Builders."[34]

The Court will address each parties' claims, in turn.

## A.    Debtor's Claims

### 1.    Debtor contends that the Stacey Court Home is her Homestead

Debtor first contends that the Stacey Court Home was and is her homestead. It is well accepted that Texas law provides extremely broad protection for homesteads through the Texas Constitution and the Texas Property Code.[35]

The initial burden of proof falls on Debtor to "establish the character of the claimed property by showing a combination of both (1) overt acts of homestead usage, and (2) an intention to claim the property as a homestead."[36] This initial burden is typically a low hurdle, and, in the usual case, mere evidence of "overt acts of homestead usage" in the form of possession and usage of the property as a homestead is sufficient.[37] As more fully detailed above, Debtor satisfied this "low hurdle" by establishing that she and her Husband lived in the Stacey Court Home for many decades as their homestead prior to executing the Deed and Vendor's Lien on October 28, 2019.

Because Debtor has made a *prima facie* case in favor of homestead status, Defendant now "has the burden of demonstrating that [Debtor's] homestead rights have been terminated."[38]

---

[34] Answer, Adv. ECF No. 17, pg. 6 ¶ 52.

[35] *See* Tex. Const. art. XVI, § 50; Tex. Property Code Ann. § 41.001; *see also Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992). Statutes relating to homestead rights are to be liberally construed. *See Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 634–35 (Tex. 1987). "The Texas Constitution has long protected homeowners against the forced sale of their homesteads." *Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. 2018).

[36] *In re Brei*, 599 B.R. 880, 892–93 (Bankr. N.D. Tex. 2019).

[37] *Bradley v. Pac. S.W. Bank, FSB (In re Bradley)*, 960 F.2d 502, 507 (5th Cir. 1992) (internal citations and quotations omitted); *see also In re Comu*, 542 B.R. 371, 384 (Bankr. N.D. Tex. 2015).

[38] *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 311 (5th Cir. 2003); *see also* FED. R. BANKR. P. 4003(c).

Texas law provides that homestead rights "may be lost only through death, *abandonment* or *alienation*."[39] Consequently, the Court must determine if the Vaituulalas lost their homestead rights in the Stacey Court Home through abandonment or alienation when they entered into the transaction with AK Builders and executed the Deed with Vendor's lien.

Courts often fail to distinguish between abandonment and alienation as separate means of losing or extinguishing homestead rights in Texas.[40] "Abandonment requires cessation or discontinuance of the use of the property coupled with intent to abandon permanently the homestead. . . . Homestead status may be lost through alienation when the title to the property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property."[41]

### a.  Debtor Alienated her Homestead rights in the Stacey Court Home

Defendant argues that the Vaituulalas lost and extinguished their homestead rights in the Stacey Court Home by alienation when they conveyed it to AK Builders in the Deed with Vendor's Lien. Debtor responds contending that (i) she never intended to alienate her homestead rights when she executed the Deed with Vendor's Lien, and (ii) the Deed with Vendor's Lien constitutes a "pretended sale" and is void under the Texas Constitution[42] (addressed *infra*).

Subject to the Debtor's "pretended sale" argument (addressed *infra*), the Court finds and concludes that, up until the Vaituulalas executed the Deed with Vendor's Lien, the Stacey Court Home was, in fact, their homestead under Texas law. But, when the Vaituulalas conveyed the

---

[39] *Perry v. Dearing (In re Perry)*, 345 F.3d at 310 (emphasis added); *see also Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d at 809 (quoting *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003)); *see also In re Comu*, 542 B.R. at 385. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 160 (Tex. 2015)

[40] *Perry v. Dearing (In re Perry)*, 345 F.3d at 310, n. 8.

[41] *Id.* (internal citations omitted); *see also* Black's Law Dictionary (11th ed. 2019) (defines alienation as "[c]onveyance or transfer of property to another.").

[42] Tex. Const. art. XVI, § 50(c).

12

Stacey Court Home to AK Builders, the Stacey Court Home lost its homestead character, even though the Vaituulalas continued to occupy the property after the conveyance to AK Builders.[43]

Under the clear and unambiguous terms of the Deed with Vendor's Lien, title to the Stacey Court Home vested in AK Builders as of October 28, 2019. Debtor's testimony that she did not understand the consequences of her voluntary decision to execute the Deed with Vendor's Lien is unavailing.

The Court finds and concludes that Debtor voluntarily alienated her homestead rights in the Stacey Court Home by executing the Deed with Vendor's Lien and conveying the property to Al, Jr.'s company, AK Builders. Accordingly, Debtor's claim that she did not alienate her homestead rights in the Stacey Court Home is without merit and is ***DENIED***.

### b.  *Debtor Abandoned her Homestead rights in the Stacey Court Home*

Because the Court finds and concludes that the Vaituulalas alienated their ownership and homestead rights in the Stacey Court Home as of October 28, 2019, by agreeing to the transaction with AK Builders and executing the Deed with Vendor's Lien, the Court need not find if, or when, Debtor "abandoned" her homestead rights in the Stacey Court Home. With that said, by her own testimony, to the extent the Debtor had a homestead right in the Stacey Court Home, she abandoned any such potential homestead right upon moving to Hawaii to live with her daughter with no intent to return to the Stacey Court Home.

---

[43] *Perry v. Dearing (In re Perry)*, 345 F.3d at 311; *see also Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. 2018) ("[h]omeowners may lawfully convey their homestead to a corporation, even if they remain in the home after the sale, for purpose of obtaining a loan."); *Eckard v. Citizens Nat'l Bank in Abilene*, 588 S.W.2d 861, 862 (Tex.Civ. App.—Eastland 1979, writ ref'd n.r.e.) (homeowner could sell home to corporation so corporation could borrow money and put valid lien on property).

Therefore, the Court finds and concludes that Debtor has abandoned whatever homestead right she may have had in the Stacey Court Home. Accordingly, Debtor's claim that the Stacey Court Home continues to constitute her homestead is ***DENIED***.

### 2. *Debtor contends that the Deed with Vendor's Lien is a void "Pretended Sale"*

Debtor next contends that the Deed with Vendor's Lien constitutes a void "pretended sale" under the Texas Constitution. The Texas Constitution provides that any sales deemed "pretended" also containing "any condition of defeasance" are void.[44]

"A 'pretended sale' is one in which the parties do not intend title to vest in the purchaser, but rather that title will be divested within a certain amount of time by paying the specified amount."[45] Therefore, to constitute a valid "pretended sale" under Texas law, the Debtor must establish (i) "a lack of intent to vest title"[46] and (ii) "the transfer involves a condition allowing the seller to reclaim title to the property after the loan is repaid[,]"[47] or said another way, the transfer must include "a condition of defeasance[.]"[48]

The party asserting a claim of "pretended sale" must provide credible evidence to satisfy both elements of the "pretended sale."[49] Based on the credible evidence in the record, the Court finds and concludes that Debtor failed to establish either element of a "pretended sale."

Although Debtor testified that she did not understand the consequences resulting from her execution of the Deed with Vendor's Lien, the Court finds that Debtor's testimony alone is insufficient to overcome the overwhelming evidence that suggests the Vaituulalas intended to

---

[44] Tex. Const. art. XVI, § 50(c); *see also State v. Forest Lawn Lot Owners Ass'n,* 152 Tex. 41, 48 (Tex. 1953).
[45] *Paull & Partners Inv.*, 558 S.W.3d at 810.
[46] *Paull & Partners Inv.*, 558 S.W.3d at 806.
[47] *Paull & Partners Inv.*, 558 S.W.3d at 810 and 813.
[48] *Paull & Partners Inv.*, 558 S.W.3d at 806.
[49] *Paull & Partners Inv.*, 558 S.W.3d at 810.

comply with Al, Jr.'s request by conveying the Stacey Court Home to AK Builders.[50] Additionally,

the overwhelming evidence established that (i) the Vaituulalas knew the conveyance of the Stacey

Court Home to AK Builders was being made so Al, Jr.'s business could obtain a loan from

Defendant; (ii) a title commitment was being issued by Chicago Title Insurance Company that AK

Builders was the fee simple owner of the Stacey Court Home under the Deed with Vendor's Lien;[51]

and (iii) the Vaituulalas voluntarily assigned the Vendor's Lien retained in the Deed with Vendor's

Lien to Defendant.[52]

Therefore, based on the credible evidence in the record, the Court finds and concludes that

Debtor failed to establish that she lacked the intent to vest title of the Stacey Court Home in AK

Builders when she executed the Deed with Vendor's Lien. Consequently, the Deed with Vendor's

Lien does not constitute a "pretended sale" rendered void by the Texas Constitution.

Even if Debtor was able to establish that she lacked the necessary intent to vest title of the

Stacey Court Home in AK Builders (to be clear, the Court does not so find), Debtor also failed to

establish that the Deed with Vendor's Lien was subject to a condition of defeasance. "A condition

of defeasance is a condition that permits the seller to reclaim title to the property after the [subject]

debt has been paid."[53]

Although the condition of defeasance need not be expressly stated in the conveyance

instrument itself, such a condition of defeasance must be implied or stated in a contemporaneous

document.[54] Other than Debtor's and Al, Jr.'s unpersuasive self-serving testimony, neither Debtor

---

[50] *Paull & Partners Inv.*, 558 S.W.3d at 811; *Adams v. First Nat'l Bank of Bells/Savory*, 154 S.W.3d 859, 870 (Tex. App.—Dallas 2005, no pet.) (a secret or undisclosed intent to convey title, or a subsequent change of intent, will not affect the validity of the conveyance).
[51] D. Ex. 10.
[52] D. Ex. 1.
[53] *Paull & Partners Inv.*, 558 S.W.3d at 813.
[54] *Paull & Partners Inv.*, 558 S.W.3d at 813; *see also Anglin v. Cisco Mortg. Loan Co.*, 135 Tex. 188, 141 S.W.2d 935, 941 (1940) (where express condition of defeasance not recited in the deed, "equity looks to all the circumstances preceding and attending the execution of the instrument[.]").

nor Al, Jr. could point to any provision in the Deed with Vendor's Lien or any other contemporaneous document that expressly or impliedly provided for a condition of defeasance. Debtor could not point to any document that expressly or impliedly provided her with the right to compel AK Builders to convey the Stacey Court Home back to her once AK Builders satisfied the $125,000 Note to Defendant. Nor is there any credible evidence in the record to suggest that AK Builders made contemporaneous statements or put forth in any documents that AK Builders intended to reconvey the Stacey Court Home to the Vaituulalas once the $125,000 Note had been satisfied.

The only provision Debtor points to as a "condition of defeasance" is the retention by the Vaituulalas of the Vendor's Lien—of which they conveyed to Defendant. But a vendor's lien retained in a deed does not constitute a condition of defeasance.

Based on the credible evidence in the record, the Court finds and concludes that Debtor failed to establish that the Deed with Vendor's Lien was subject to a condition of defeasance. Consequently, the Deed with Vendor's Lien does not constitute a "pretended sale" rendered void by the Texas Constitution.

The Court finds and concludes that the transaction between the Vaituulalas and AK Builders evidenced by the Deed with Vendor's Lien does not constitute a "pretended sale" in violation of the Texas Constitution. Accordingly, Debtor's claim that the transfer of the Stacey Court Home to AK Builders was a "pretended sale" and is void under Texas Constitution Article XVI § 50(c) is without merit and is ***DENIED***.

**B.**      **Defendant's Affirmative Defenses**

Because all of Debtor' claims against Defendant are denied on the merits, the Court need not address Defendant's affirmative defenses. Consequently, Defendant's affirmative defenses are ***DENIED*** as ***MOOT***.

**C.**      **Defendant's Counterclaims**

Based on the credible evidence in the record, and as fully addressed *supra*, the Court finds and concludes that the Vaituulalas conveyed title of the Stacey Court Home to AK Builders by the Deed with Vendor's Lien. The Court further finds and concludes that the Vaituulalas assigned the Vendor's Lien they retained in the Deed with Vendor's Lien to the Defendant. Additionally, the Court finds and concludes that (i) the Deed of Trust secured the $125,000 Note made by AK Builders to Defendant; and (ii) the April 7, 2020, foreclosure sale conveyed title of the Stacey Court Home to the Defendant.

Based on these findings and conclusions, the Court further finds and concludes that Defendant's counterclaims are moot.

Therefore, Defendant's counterclaims against Debtor are ***DENIED*** as ***MOOT***.

### IV.      CONCLUSION

Each of Debtor's claims against Defendant fail and are ***DENIED***.

Each of Defendant's affirmative defenses are ***DENIED*** as ***MOOT***.

Each of Defendant's counterclaims against Debtor are ***DENIED*** as ***MOOT***.

Consequently, the Court will enter a separate final judgment consistent with these Findings of Fact and Conclusions of Law.

### ### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###